## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

---

| | |
|---|---|
| JULIA YOUNG, Individually and as Surviving Spouse and Next of Kin of CECIL YOUNG, DEBRA WILLIAMS, MICHAEL YOUNG, and CECIL YOUNG, JR., as Surviving Children of CECIL YOUNG, | ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | )      No. 07-2547-STA ) |
| OLYMPUS AMERICA, INC., | ) ) |
| Defendant. | ) |

---

## ORDER GRANTING IN PART, DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Before the Court is Defendant Olympus America, Inc. ("OAI")'s Motion for Summary Judgment (D.E. # 45) filed on March 1, 2010. Plaintiffs have filed a response in opposition pursuant to Fed. R. Civ. P. 56(f), seeking time for additional discovery needed to respond to Defendant's Motion for Summary Judgment. For the reasons set forth below, Defendant's Motion is **GRANTED IN PART, DENIED IN PART**.

## BACKGROUND

Plaintiffs have alleged a series of product liability claims against Defendant arising from the distribution of a medical device known as a bronchoscope. Plaintiffs allege that their father Cecil Young, deceased, contracted a bacterial infection in 2001 due to a defect in Defendant's

1

bronchoscope.  According to Plaintiffs, the defect in the bronchoscope allowed bacteria to collect on the instrument and prevented normal sterilization procedures from eliminating the bacteria.

Plaintiffs originally filed suit in the Circuit Court for Shelby County, Tennessee, against Defendant OAI; Dr. Lisa Kennedy ("Dr. Kennedy"), the physician who performed the bronchoscopy on Cecil Young; and Methodist Hospital-North ("Methodist"), the hospital where the bronchoscopy was performed.  After Defendant OAI moved for summary judgment in the state court proceeding, Plaintiffs voluntarily dismissed Defendant OAI from the case; however, their claims against the physician and the hospital remain pending in state court.

Defendant has presented the following statement of undisputed facts in its Motion: Cecil Young, now deceased, had a medical history of mantle cell lymphoma. (Def.'s Statement of Facts ¶ 1).[1]  On March 27, 2001, Cecil Young was admitted to Methodist out of concern for a pulmonary infection that was not responding to antibiotics. (*Id.* ¶ 2).  On March 28, 2001, a sputum specimen was obtained from Cecil Young. (*Id.* ¶ 3).  A  microbiological assay performed on the specimen revealed the presence of *Pseudomonas aeruginosa.* (*Id.* ¶ 4).  It was not until six days later, on April 3, 2001, that Cecil Young's treating physician performed a bronchoscopy on Mr. Young at Methodist. (*Id.* ¶ 5).  A bronchial washing specimen obtained during the April 3, 2001 bronchoscopy demonstrated the presence of *Pseudomonas aeruginosa*, which had an antibiogram consistent with being the same organism found to be present in the March 28, 2001 sputum specimen. (*Id.* ¶ 6).

---

[1] The Court finds that Defendant's Motion does not comply with Local Rule 7.2(d)(2) in that Defendant has failed to number its statement of facts. Local Rule 7.2(d)(2) ("the proponent of the motion shall submit in a separate document affixed to the memorandum each material fact upon which the proponent relies in support of the motion by serial numbering."). As a result, the Court has assigned numbers to Defendant's un-numbered statements.

Plaintiffs have added in response that a bronchoscopy report for the April 3, 2001 bronchoscopy noted no airway inflammation or significant purulent secretions, which is inconsistent with an active P.A. infection on or before March 28, 2001. (Pls.' Statement of Facts ¶ 4).  Also on April 13, 2001, Mr. Young was seen by his oncologist Dr. Walsh who reported no symptoms of an active bacterial infection and further concluded that Mr. Young's upper respiratory infection had resolved.  (*Id*. ¶ 6).  Then Mr. Young was readmitted to Methodist on April 18, 2001, with symptoms consistent with a severe bacterial infection. (*Id*. ¶ 7). According to Plaintiffs, the incubation period for a P.A. infection is fourteen days. (*Id*.).  Mr. Young remained hospitalized at Methodist until his death on June 12, 2001, due to pneumonia caused by a sever bacterial infection. (*Id*. ¶ 8).

Turning to the material facts regarding the bronchoscope at issue in this case, Defendant asserts that it does not manufacture bronchoscopes. (Def.'s Statement of Facts ¶ 7).  Rather, OAI markets, distributes and services bronchoscopes which are manufactured by Olympus Medical Systems Corporation. (*Id.* ¶ 8).  OAI does not participate in any manner in the design and/or manufacture of the bronchoscopes it distributes. (*Id.* ¶ 9).  When OAI acquires bronchoscopes for domestic distribution, the bronchoscopes are packaged in a sealed container, and they are not repackaged or otherwise accessed for inspection prior to distribution by OAI. (*Id.* ¶ 10).

Plaintiffs have responded with additional facts recently learned in discovery in the state court matter.  The bronchoscope used on Cecil Young on April 3, 2001 was marketed and distributed by OAI. (Pls.' Statement of Facts ¶ 9).  Both bronchoscopes utilized in the Methodist GI Lab during the relevant time period were subject to the recall issued by OAI in late 2001. (*Id.*).  The recall was issued due to a problem with loose biopsy port caps which allowed bacteria

to enter the port where it could not be removed, even with the manufacturer's recommended disinfection and sterilization procedure. (*Id.*).  Both of the OAI bronchoscopes were returned to OAI in early 2002 and one or both had a loose biopsy port cap at the time of the return. (*Id.* ¶ 10). The same bronchoscopes had been previously returned to OAI in or around April 2001 because of loose biopsy port caps. (*Id.*).  Suspected problems with the OAI bronchoscopes used at the Methodist GI Lab were also noted in November 2001 prior to the recall. (*Id.* ¶ 11).

The bronchial washing specimen obtained during the April 3, 2001 bronchoscopy demonstrated the presence of a P.A. which had an antibiogram consistent with the P.A. noted in the sputum culture. (*Id.* ¶ 12).  However, the susceptibility studies indicated did not show identical results. (*Id.*).  According to the opinion of Dr. Gary Salzman, Plaintiffs' expert witness, stated within a reasonable degree of medical certainty, it is more likely than not that the P.A. bacteria was introduced into Cecil Young's respiratory system during the April 3, 2001 bronchoscopy by the defective Olympus bronchoscope.  (*Id.* ¶ 13).

In the Motion before the Court, Defendant argues that it is entitled to summary judgment because Plaintiffs have failed to offer expert proof that the bronchoscope used on Cecil Young was defective or unreasonably dangerous or that the alleged defect or dangerous condition proximately caused the bacterial infection in Young's April 13, 2001 bronchoscopy. Contemporaneous to the filing of the instant Motion, Defendant filed a motion in limine to exclude the testimony of Dr. Slazman, Plaintiffs' experts. Defendant asserts that Plaintiffs have had seven years since they first brought suit against Defendant in state court to discover facts in support of their claims but have failed to do so.  Defendant further argues that Cecil Young had the P.A. bacterial infection prior to the bronchoscopy.  Therefore, Plaintiffs cannot prove that an

alleged defect in the bronchoscope caused the P.A. infection.  As for Plaintiffs' claims for strict

product liability, negligence, and failure to warn, Defendant contends that it cannot be liable

because it only the distributed the bronchoscope in a sealed container.  Defendant also seeks

summary judgment on Plaintiffs' claim for breach of express warranty.

  Plaintiffs have responded in opposition to Defendant's Motion pursuant to Rule 56(f).

Counsel for Plaintiffs has submitted an affidavit in support stating that Plaintiffs were only

recently provided with discovery from Methodist about the bronchoscopes in use in 2001.

Methodist has admitted that there were only two bronchoscopes in use in 2001 and that both

instruments were recalled in late 2001 and early 2002 due to reported problems with a loose

biopsy port cap.  Both bronchoscopes at the hospital had the loose port caps at the time of the

recall.  The hospital also disclosed that both bronchoscopes had the same problem in the spring

of 2001 and were sent to OAI for repairs before the recall.  Counsel for Plaintiffs also averred

that Plaintiffs are seeking additional discovery from Methodist in the state court case and plan for

more depositions.  Counsel states that Dr. Kennedy, the physician who performed the

bronchoscopy on Cecil Young in 2001, was deposed on March 25, 2010.  Although the transcript

of the deposition is not yet available, the physician testified that Cecil Young did not have a P.A.

bacterial infection prior to the bronchoscopy.  Plaintiffs also plan to make this new information

available to their expert so that he can give a supplemental affidavit.

  Plaintiffs have filed a separate response brief.  First, Plaintiffs argue that Defendant's

Motion is premised on the Court excluding the testimony of the Plaintiffs' expert witness.

Because Plaintiffs have obtained the new evidence described in counsel's affidavit, Plaintiffs

anticipate that their expert will supplement his first two affidavits.  Plaintiffs argue then that

exclusion of their expert is premature.  Plaintiffs attack Defendant's motion in limine to exclude

their expert by arguing that Defendant "knowingly misrepresents to the Court" that Plaintiffs

have no proof that the bronchoscopes Methodist used were ever recalled.  Second, Plaintiffs

contend that there is material dispute over whether Cecil Young had a P.A. bacterial infection

prior to his April 2001 bronchoscopy.  Both Plaintiff's expert and the physician who performed

the bronchoscopy have stated on the record that it is more likely than not that Cecil Young did

not have an active infection prior to the bronchoscopy.  For these reasons, Plaintiffs argue that

there is enough evidence in the record for a reasonable juror to conclude that the bacteria was

introduced during the bronchoscopy.  Plaintiffs also cite two studies linking defective OAI port

caps to P.A. bacterial infections at Johns Hopkins Hospital and Skyline Hospital in Nashville.

Finally, while Plaintiffs concede their claim for breach of express warranty, they argue that

Defendant has not moved for summary judgment on Plaintiffs' claim of breach of implied

warranty.  Therefore, Plaintiffs ask the Court to deny Defendant's Motion for Summary

Judgment.

## **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56(c) provides that a

judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the affidavits, if any, show that
there is no genuine issue as to any material fact and that the moving party is entitled
to a judgment as a matter of law.[2]

In reviewing a motion for summary judgment, the evidence must be viewed in the light most

---

[2] Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

favorable to the nonmoving party.[3]  When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[4]  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[5]  These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[6]  When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law."[7]

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[8]  In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [her] asserted causes of action."[9]  Finally, the "judge may not make credibility determinations or weigh the evidence."[10]  Under Federal Rule of

---

[3] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[4] *Celotex*, 477 U.S. at 324.

[5] *Matsushita*, 475 U.S. at 586.

[6] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[7] *Id*. at 251-52 (1989).

[8] *Celotex*, 477 U.S. at 322.

[9] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[10] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

Civil Procedure 56(c), summary judgment is proper "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."[11]

<u>ANALYSIS</u>

**I.      Plaintiffs' Conceded Claims**

Plaintiffs have alleged the following causes of action in their Complaint: negligence, product liability, strict liability, failure to warn, and breaches of implied and express warranty. Defendant's Motion seeks summary judgment on Plaintiffs' claims of negligence, strict liability, failure to warn, and breach of express warranty.  Defendant cites Tenn. Code Ann. 29-28-106(a), which bars a product liability claim against a seller where the product is acquired and sold by the seller in a sealed container.[12]  Defendant argues that this section precludes all product liability claims against it, except those for breach of express or implied warranty, because Defendant was the distributor of the product at issue and the product was sold in a sealed contained.

In response to Defendant's Motion, Plaintiffs have conceded their claims for breach of express warranty and strict liability.[13]  Therefore, Defendant's Motion is **GRANTED** as to those claims.  As for their claims for negligence and failure to warn, Plaintiffs have failed to address Defendant's arguments.  Specifically, Plaintiffs have not contested Defendant's assertion that the bronchoscope at issue was sold in a sealed container, thereby barring any product liability claim under Tennessee law against Defendant except a claim for breach of express or implied warranty.

---

[11] Fed. R. Civ. P. 56(c); *see also Celotex*, 477 U.S. at 322 (1986).

[12] The code section provides exceptions which are not implicated in the case at bar.

[13] Plaintiffs point out that Defendant has not sought summary judgment as to their claim for breach of implied warranty.  Therefore, that claim remains.

According to the affidavit of Defendant's vice-president of regulatory affairs and quality assurance, Defendant receives the bronchoscopes in question as finished goods packaged in a sealed container.[14]  Plaintiffs have not come forward with any evidence from which a reasonable juror could conclude otherwise.  Nor have Plaintiffs addressed Defendant's argument in their Rule 56(f) request.  Therefore, Defendant's Motion is **GRANTED** as to Plaintiffs' claims for negligence and failure to warn.


II.      **Plaintiffs' Rule 56(f) Motion**

Plaintiffs have also sought further discovery for the purpose of responding to Defendant's Motion for Summary Judgment.  Plaintiffs state that Methodist Hospital, which is not a party to this suit, recently provided information about Defendant's bronchoscopes through discovery in the state court case.  Counsel for Plaintiffs has filed an affidavit pursuant to Rule 56(f) stating that Plaintiffs need the following additional information: other facts from Methodist related to problems with the bronchoscopes used at the Methodist Hospital-North campus in 2001 and 2002; the deposition of other witnesses concerning the bronchoscopes at issue; the final transcript of the March 25, 2010 deposition of Dr. Kennedy; and a supplemental affidavit incorporating this new information from Plaintiffs' expert Dr. Salzman.

Rule 56(f) specifically governs the need for additional discovery to prepare a response to a motion for summary judgment.  In this way, Rule 56(f) acts as a "safety valve" to head off a premature swing of the "summary judgment axe."[15]  Under Rule 56, a non-moving party must

---

[14] Storms-Tyler Aff. ¶ 5; Def.'s Mot. Summ. J. ex. 4.

[15] *Rivera-Torres v. Rey-Hernandez*, 502 F.3d 7, 10-11 (1st Cir. 2007) (citation omitted).

receive "a full opportunity to conduct discovery" in order to respond to a motion for summary judgment.[16]  To that end Rule 56(f) provides that the court may "order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken."[17]  In order to invoke Rule 56(f), however, the party opposing the motion for summary judgment must show "by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition."[18]  The Sixth Circuit has ruled that the filing of an affidavit and/or motion pursuant to Rule 56(f) is a necessary prerequisite to granting extensions of time for the purpose of obtaining additional discovery to respond to a motion for summary judgment.[19]  Rule 56(f) requires that the moving party's affidavit "indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information."[20]  The Sixth Circuit has held that it is not an abuse of discretion for the district court to deny the Rule 56(f) request when the party "makes only general and conclusory statements [in its affidavit] regarding

---

[16] *Ball v. Union Carbide Corp.,*385 F.3d 713, 719-20 (6th Cir. 2004).  *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"); *White's Landing Fisheries, Inc. v. Buchholzer,* 29 F.3d 229, 231-32 (6th Cir.1994) ("[in light of *Anderson* and *Celotex,*] a grant of summary judgment is improper if the non-movant is given an insufficient opportunity for discovery").

[17] Fed. R. Civ. P. 56(f)(2).

[18] Fed. R. Civ. P. 56(f).

[19] *Plott v. Gen. Motors Corp.,* 71 F.3d 1190, 1196 (6th Cir.1995).

[20] *Cacevic v. City of Hazel Park,* 226 F.3d 483, 488 (6th Cir.2000).  *See also CenTra, Inc. v. Estrin*, 538 F.3d 402, 420 (6th Cir. 2008).

10

the need for more discovery and does not show how an extension of time would have allowed information related to the truth or falsity of the [claim] to be discovered."[21]

The Court holds that Plaintiffs have complied with the technical requirements of Rule 56(f). Plaintiffs have filed a response briefing Rule 56(f). Counsel for Plaintiffs has also submitted a detailed affidavit about new information Plaintiffs recently discovered from Methodist. Counsel's affidavit specifically requests additional time for the purpose of seeking more information about the bronchoscope in question from Methodist, conducting depositions based on the new information, receiving the final deposition transcript of the treating physician, and allowing Plaintiffs' expert time to review all of the new information and supplement his report. Counsel avers that Plaintiffs have not previously discovered the information because Methodist had resisted Plaintiffs' requests. The Court finds that counsel's affidavit contains enough information to satisfy Rule 56(f). Therefore, the Court will consider the merits of Plaintiffs' Rule 56(f) request.

In determining whether a Rule 56(f) request should be granted, the Court will consider the following factors: (1) when the party seeking discovery learned of the issue that is the subject of the desired discovery; (2) whether the desired discovery would change the ruling; (3) how long the discovery period lasted; (4) whether the party seeking discovery was dilatory in its discovery efforts; and (5) whether the non-moving party was responsive to discovery requests.[22]

_____

[21] *Ironside v. Simi Valley Hosp.,* 188 F.3d 350, 354 (6th Cir.1999). *See also Emmons v. McLaughlin,* 874 F.2d 351, 357 (6th Cir.1989) (not an abuse of discretion to reject a Rule 56(f) affidavit as insufficient to support further discovery when the affidavit lacks "any details" or "specificity").

[22] *Plott*, 71 F.3d at 1196-97.

11

Applying these factors to the case at bar, the Court finds that the balance of the factors weighs in favor of granting Plaintiffs' motion for additional discovery.  The first factor favors an extension because Plaintiffs only recently obtained responses to its discovery requests from a non-party, Methodist Hospital.  Counsel's affidavit indicates that Methodist had resisted Plaintiffs' attempts to discover highly relevant facts about the bronchoscope used in Cecil Young's procedure.  The new information confirms that the two bronchoscopes in use at the hospital during the relevant time period had the defect Plaintiffs have alleged and were both recalled some time after one of them was used in Young's bronchoscopy.  While Plaintiffs have known since the filing of their Complaint that they would need to prove that the bronchoscope used on Young was defective, Plaintiffs only received this information to support their contention recently.  Therefore, Plaintiffs should have the opportunity to further develop these facts.

The second factor favors an extension for additional discovery because construing the new facts in a light most favorable to Plaintiffs, the desired discovery would change the Court's ruling on Defendant's Motion for Summary Judgment.  Among other things, Defendant has argued that Plaintiffs cannot show that the bronchoscope used on Cecil Young was defective or unreasonably dangerous.  The recent discovery Plaintiffs' have obtained from Methodist appears to contradict this assertion and is therefore relevant to the issues raised in Defendant's Motion.

The third factor, how long the discovery period lasted, also weighs in favor of granting Plaintiffs additional discovery.  The record shows that the original scheduling order was entered in this case on September 18, 2007.  The case was then stayed in January 2008 by virtue of one

Plaintiff's bankruptcy filing.[23]  Upon notice from the parties, the Court lifted the stay in May 2009.[24]  According to the new scheduling order entered August 25, 2009, the deadline for the completion of fact discovery, including depositions, was November 27, 2009, and the deadline for expert witness depositions was January 29, 2010.  The Court finds that due to the sixteen-month stay in proceedings, the length of discovery in this case was not unduly long.  Thus, this factor favors an extension despite Plaintiffs' failure to seek an extension before the deadline passed.

The fourth factor, whether Plaintiffs were dilatory in their discovery efforts, however, does weigh against granting an extension.  Plaintiffs have stated that the discovery they needed was within the control of a non-party.  Other than to state that Methodist resisted their attempts to obtain the information about the bronchoscopes, Plaintiffs have not detailed what efforts they undertook to get the information, that is whether they sought court intervention to compel Methodist to respond, or when they took them.  It is also true that Plaintiffs originally filed suit against Defendant in state court some years ago and assumably had an opportunity for discovery then.  Most importantly, Plaintiffs failed to move for an extension of discovery until almost four months after the deadline expired.  Plaintiffs have not explained why they allowed so much time to pass without seeking more time to get the information they needed from Methodist.  The Court finds that Plaintiffs could have avoided their predicament simply by seeking a timely extension of discovery but failed to do so.  Thus, the fourth factor should weigh against their request.

Finally, the fifth factor, whether the non-moving party was responsive to discovery

---

[23] Order Staying Case, June 4, 2008.

[24] Order Lifting Stay, May 11, 2009

13

requests, is not an issue in this case.  Plaintiffs have argued that the discovery was in the possession of Methodist, not Defendant.  There is no allegation that Defendant has not cooperated fully in discovery.  Therefore, this factor is not relevant to the Court's analysis.

Based on the foregoing, the Court finds that the balance of the factors favors granting Plaintiffs additional opportunity for the discovery they seek in this case.  Under the circumstances, Plaintiffs are entitled to have more discovery in order to respond to Defendant's Motion.  The Court will refer the matter of a new discovery plan to the Magistrate Judge for determination.  As for Defendant's Motion, Rule 56(f) authorizes the Court to (1) deny the motion for summary judgment; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order.[25] The Court holds that Defendants' Motion for Summary Judgment should be denied as to the issues not already addressed in this Order without prejudice to re-file after appropriate discovery is complete.

<u>CONCLUSION</u>

The Court holds that Defendant is entitled to summary judgment on Plaintiffs' conceded claims of negligence, strict liability, failure to warn, and breach of express warranty.  However, Plaintiffs have shown that they are entitled to more discovery in light of the recently obtained facts about the bronchoscopes used at Methodist Hospital in 2001 and 2002.  Therefore, Defendant's Motion is **GRANTED IN PART, DENIED IN PART**.  With respect to the issues where Defendant's Motion was denied, the Motion is denied without prejudice to re-file.

---

[25] Fed. R. Civ. P. 56(f).

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: May 5th, 2010.