IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

| | | |
|---|---|---|
| JULIA YOUNG, Individually and as Surviving Spouse and Next of Kin of CECIL YOUNG, DEBRA WILLIAMS, MICHAEL YOUNG, and CECIL YOUNG, JR., as Surviving Children of CECIL YOUNG, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 07-2547-STA |
| OLYMPUS AMERICA, INC., | ) ) | |
| Defendant. | ) | |

---

## ORDER DENYING PLAINTIFFS' MOTION TO SET ASIDE JUDGMENT

---

Before the Court is Plaintiffs' *pro se* Motion to Set Aside Judgment (D.E. # 111) filed on January 25, 2013.[1] Defendant has filed a response in opposition. For the reasons set forth below, the Motion is **DENIED**.

### BACKGROUND

In this products liability action,[2] Plaintiffs alleged that Defendant distributed and sold a

---

[1] At the time the Court entered judgment in January 2012, Plaintiffs were represented by counsel. As Plaintiffs explain in their Motion to Set Aside Judgment, counsel specifically declined to file a Rule 60(b) motion on Plaintiffs' behalf. Mem. in Support Mot. to Set Aside J. 9-10 (D.E. # 111-1).

[2] Plaintiffs originally filed suit in the Circuit Court for Shelby County, Tennessee, against Defendant; Dr. Lisa Kennedy, the physician who performed the medical procedure on Cecil Young; and Methodist Hospital-North ("Methodist"), the hospital where the procedure was performed. After Defendant moved for summary judgment in the state court proceeding,

1

defective medical device known as a bronchoscope. According to the Plaintiffs, the device contained a defect which allowed bacteria to collect on the instrument and prevented normal sterilization procedures from eliminating the bacteria. Plaintiffs' decedent Cecil Young contracted a bacterial infection in 2001 after undergoing a bronchoscopy with Defendant's allegedly defective device. Plaintiffs alleged that the defect in the bronchoscope used during Mr. Young's procedure caused the bacterial infection. On May 6, 2010, the Court granted Defendant partial summary judgment on Plaintiffs' claims of negligence, strict liability, failure to warn, and breach of express warranty. On January 26, 2012, the Court granted Defendant summary judgment on Plaintiffs' remaining claim for breach of implied warranty and entered judgment in favor of Defendant.

In the Motion before the Court, Plaintiffs seek relief from the Court's judgment under Federal Rule of Procedure 60(b) and (d). Plaintiffs argue that the Court should set aside its judgment based on the availability of newly discovered evidence; fraud, misrepresentation, or misconduct by Defendant; and fraud on the Court. First, Plaintiffs argue that Defendant's vice-president of regulatory affairs and quality assurance Laura Storms-Tyler ("Storms-Tyler") misrepresented material facts about Defendant and its role in distributing the bronchoscopes in question. Plaintiffs cite Storms-Tyler's summary judgment declaration in which she averred that Defendant acquired the bronchoscopes as "finished goods packaged in a sealed container" and claimed that Defendant "does not repackage or otherwise have an opportunity to inspect the bronchoscopes prior to distribution."[3] Plaintiffs argue that Storms-Tyler later contradicted this declaration in her deposition when she

---

Plaintiffs voluntarily dismissed Defendant from that case. As far as the Court can tell, Plaintiffs' claims against Dr. Kennedy and the hospital remain pending in state court.

[3] Mem. in Support Mot. to Set Aside J. 1, ex. 1.

testified that "the bronchoscope is shipped in what I'll call a suitcase" and "needs to be reprocessed prior to patient use" along with "components and accessory devices."[4] Plaintiffs argue that this testimony shows that the bronchoscopes were not received in sealed containers and that Defendant did in fact have an opportunity to inspect them. Plaintiffs assert that not only did Storms-Tyler misrepresent these facts in her summary judgment declaration, but also that "Ad Hoc" counsel for Defendant Jameson Carroll knew that Storms-Tyler's affidavit contained the alleged misrepresentations. Plaintiffs also cite for support a document which is purportedly a 2002 FDA report documenting the inspection of the facility in Japan where the bronchoscope was manufactured. According to the FDA report, Storms-Tyler stated to an FDA inspector that Defendant received the bronchoscopes from the Japanese parent company "packaged in bulk plastic bags."[5] Defendant then had the instruments "packaged and sterilized by American Sterilization and Packaging."[6] In a subsequent internal memorandum, Storms-Tyler stated that Defendant needed "to revise our [FDA] registration status to reflect our manufacturing obligations for this activity" as well as "be prepared for any FDA inspection regarding "NAS&P [presumably American Sterilization and Packaging] sterilization" of the bronchoscope components.[7] In light of this evidence, Plaintiffs argue that Storms-Tyler "intentionally misrepresented her duties" and the duties of Defendant, including "hands on access, assembly, sterilization and repackaging duties."[8] Therefore, relief from the

---

[4] *Id.* at 2, ex. 2.

[5] *Id.* at 3, ex. 5.

[6] *Id.*

[7] *Id.*, ex. 6.

[8] *Id.* at 4.

Court's judgment is proper.

Second, under a section of their brief titled "Failure to Warn - Implied Warranty," Plaintiffs review evidence, which was before the Court previously, showing other outbreaks of bacterial infection at Johns Hopkins and Skyline Hospital in Nashville, Tennessee, associated with defective bronchoscopes sold by Defendant. Plaintiffs contend that the manufacturer of the bronchoscopes "Olympus Tokyo" received complaints about defective biopsy ports on these instruments as early as 1999 but only took action to recall the devices once Skyline Hospital identified the defect more than two years later. Plaintiffs essentially accuse Defendant and its parent corporation of a cover-up to hide widespread problems with its bronchoscopes. Plaintiffs argue that this evidence proves Defendant's bronchoscopes were "defective" and "unreasonably dangerous" for purposes of the Tennessee Products Liability Act ("TPLA").

Third, Plaintiffs argue that Defendant is the wholly-owned subsidiary of Olympus Corporation and not merely a distributor of the defective bronchoscopes. Plaintiffs claim without actually citing any evidence that "[r]ecent Olympus admissions and exposures reveal a pattern of fraud" within the company and are consistent with "a history of collusion, conspiracy and fraud."[9] While admitting that this evidence of fraud is unrelated to the issues in this case, Plaintiffs argue that Defendant's failure to cure the defect in the bronchoscopes at issue was "not just negligent" but "criminal."

Fourth, Plaintiffs assert that Defendant's attorneys engaged in misconduct and thereby deprived Plaintiffs of their counsel of choice. Plaintiffs' allegations on this point are not entirely clear. Plaintiffs describe in some detail the parties' failures to achieve a settlement and the

---

[9] *Id.* at 8.

deterioration of Plaintiffs' relationship with former counsel. Plaintiffs emphasize that their former attorneys urged Plaintiffs to accept a settlement offer from Defendant but that former counsel never provided Plaintiffs with adequate information about the impact of a Medicare lien on the settlement proceeds. As a result, Plaintiffs would not accept the offer and counsel sought leave to withdraw from further representation. Plaintiffs contend that Defendant created in Plaintiffs' former attorneys a "fear" of "legal reprisal" and that this intimidation "denied Plaintiffs access to judicial process." Plaintiffs also believe that counsel for Defendant Jameson Carroll dissuaded Plaintiffs' replacement counsel from filing a post-judgment Rule 60(b) motion by telling counsel for Plaintiffs that they would be "crazy to file" such a motion and "implied legal reprisal" against counsel.[10] Plaintiffs cite for support an email sent by Carroll to counsel for Plaintiffs, explaining that Defendant did not have a settlement offer "on the table" at that time.[11] According to Plaintiffs, all of these actions had the effect of improperly intimidating Plaintiffs' attorneys from acting in Plaintiffs' best interests.

Finally, Plaintiffs engage in an extensive review of the evidence to support the merits of their claims and argue that the record presents sufficient questions of material fact to preclude summary judgment.

In its response in opposition, Defendant argues that Plaintiffs have failed to show any basis for setting aside the Court's judgment in this case. Defendant contends that Plaintiffs have not cited any previously unavailable evidence and for this reason relief under Rule 60(b)(2) is not proper. Defendant next argues that Plaintiffs' claim of fraud or misrepresentation is not actually supported by the evidence cited. According to Defendant, Storms-Tyler's summary judgment affidavit does

---

[10] *Id.* at 10.

[11] *Id.*

5

not actually contradict her subsequent deposition testimony. As for the allegations of wrongdoing by counsel for Defendant, Plaintiffs have failed to show that counsel for Defendant intimidated or threatened counsel for Plaintiffs in any way. Defendant further argues that any complaints Plaintiffs have about the representation provided by their own attorneys cannot constitute grounds for Rule 60(b) relief. Defendant lastly contends that Plaintiffs failed to file their Rule 60(b) Motion within a reasonable time. For these reasons, the Motion should be denied.

## STANDARD OF REVIEW

Rules 60(b) permits a court to relieve a party from a final judgment, order, or proceeding under the following limited circumstances: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.[12] Any motion for relief brought under Rule 60(b) must be filed within a reasonable time, and "for reasons (1), (2), and (3), no more than one year after the entry of judgment . . . ."[13] Furthermore, Rule 60(d)(3) permits a court to "set aside a judgment for fraud on the court."[14]

---

[12] Fed. R. Civ. P. 60(b).

[13] Fed. R. Civ. P. 60(c)(1). Defendant has argued that although Plaintiffs filed their Motion within one year of the entry of judgment, Plaintiffs did not file their Motion within a reasonable time. Because Plaintiffs did act within Rule 60(c)(1)'s absolute one-year time limit, the Court will accept the Motion as timely.

[14] Fed. R. Civ. P. 60(d)(3).

6

# ANALYSIS

The Court holds that Plaintiffs have not demonstrated an entitlement to relief pursuant to Federal Rule of Civil Procedure 60. Plaintiffs memorandum states that their Motion is brought under paragraphs (b)(2), (b)(3), (b)(6), and (d)(3) of Rule 60. The Court will consider each of Plaintiffs' arguments in turn.

**I. Newly Discovered Evidence - Rule 60(b)(2)**

First, the Court holds that Plaintiffs have not shown why relief is proper under Rule 60(b)(2) because Plaintiffs have not met their burden to demonstrate that any newly discovered evidence exists in this case. "Newly discovered evidence" for purposes of Rule 60(b)(2) "must pertain to evidence which existed at the time of trial."[15] In order to obtain relief from judgment under Rule 60(b)(2), Plaintiffs "must demonstrate (1) that [they] exercised due diligence in obtaining the information and (2) [that] the evidence is material and controlling and clearly would have produced a different result if presented before the original judgment."[16] Construing their *pro se* Motion liberally in their favor, Plaintiffs have failed to show that any of the evidence they cite was "newly discovered" for purposes of Rule 60(b)(2). In fact, the Court finds that many of the exhibits and other facts asserted in Plaintiffs' brief were part of the record previously considered by the Court. Without some showing that newly discovered evidence exists in this case or that such evidence "would have produced a different result," Plaintiffs Motion under Rule 60(b)(2) must be **DENIED**.

---

[15] *Estate of Hickman v. Moore*, No. 11-5120, 2012 WL 4857037, at *11 (6th Cir. Oct. 15, 2012) (quoting *Davis v. Jellico Cmty. Hosp., Inc.*, 912 F.2d 129, 136 (6th Cir. 1990)).

[16] *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 615 (6th Cir. 2012) (citations omitted).

**II. Fraud, Misrepresentation, or Misconduct - Rule 60(b)(3)**

As for Plaintiffs' request for relief under Rule 60(b)(3), Plaintiffs' primary allegation of fraud is their contention that Defendant through Laura Storms-Tyler misrepresented Defendant's role in processing and handling the bronchoscopes in question. Rule 60(b)(3) gives the Court discretion to relieve a party from a final judgment in cases of fraud, misrepresentation, or misconduct by an opposing party. The Sixth Circuit has adopted the following definition of fraud in the context of Rule 60(b)(3): "the knowing misrepresentation of a material fact, or concealment of the same when there is a duty to disclose, done to induce another to act to his or her detriment."[17] Furthermore, "fraud" includes "deliberate omissions when a response is required by law or when the non-moving party has volunteered information that would be misleading without the omitted material."[18] A party moving for relief under Rule 60(b)(3) must establish the alleged fraud or misrepresentation by clear and convincing evidence.[19] What is more, the moving party must show that absent the fraudulent testimony, "a jury might have reached a different conclusion."[20]

The Court holds that Plaintiffs have not shown by clear and convincing proof that Storms-Tyler misrepresented Defendant's role in handling and processing the bronchoscope used in Mr.

---

[17] *Info-Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 456 (6th Cir. 2008) (citations omitted).

[18] *Id.* (citation omitted).

[19] *Travelers Cas. & Sur. Co. of Am. v. J.O.A. Const. Co., Inc.,* No. 09–1610, 2012 WL 154973, at * 9 (6th Cir. May 2, 2012); *Info-Hold, Inc.*, 538 F.3d at 456.

[20] *Abrahamsen v. Trans-State Exp., Inc.*, 92 F.3d 425, 428 (6th Cir. 1996) (quotation omitted).

8

Young's procedure. The Court finds that Storms-Tyler's summary judgment declaration and her deposition testimony do not actually conflict with each other. The February 24, 2010 affidavit states that Defendant acquired bronchoscopes as "finished goods packaged in a sealed container" and that Defendant "d[id] not repackage or otherwise have an opportunity to inspect the bronchoscopes prior to distribution."[21] In her deposition, Storms-Tyler again explained that the instrument came "as a finished good" but that it was "not provided as a sterile device."[22] Plaintiffs have not shown how Storms-Tyler misrepresented any facts about the bronchoscope in her declaration or deposition testimony, much less proven a fraud or misrepresentation by clear and convincing evidence. Plaintiffs have presented proof in the form of the 2002 FDA report that Defendant had its bronchoscopes "packaged and sterilized" by a third-party known as American Sterilization and Packaging. It would appear that this evidence contradicts Storms-Tyler's assertion that Defendant received the bronchoscopes from Japan in sealed containers and did not sell or distribute the bronchoscopes as sterile devices. However, the FDA inspection occurred some years after Defendant sold the bronchoscope at issue in this case, and the excerpt of the FDA report does not indicate whether Defendant adopted its sterilization practices before or after it sold the bronchoscope to Methodist Hospital.[23] Without additional information, Plaintiffs have not established that Storms-

---

[21] Storms-Tyler Decl. ¶ 5 (D.E. # 45-5).

[22] Mem. in Support Mot. to Set Aside J., ex. 2.

[23] The evidence further shows that in response to the FDA report, Storms-Tyler directed her subordinates to revise Defendant's "registration status to reflect our manufacturing obligations for this activity." *Id.*, ex. 6. In a previously-filed motion to alter or amend, Plaintiffs argued that Defendant's FDA registration proved Defendant was actually a "manufacturer" of the bronchoscope for purposes of Tennessee law. *See* Pls.' Mot. to Alter or Am. Summ. J. Order, June 1, 2010 (D.E. # 63). The Court held that Plaintiffs had not shown why "the definition of 'manufacturer' from a single federal regulation is in anyway relevant to the Tennessee Products

9

Tyler misrepresented Defendant's role in sterilizing or packaging the bronchoscope used in Mr. Young's procedure.

Even if Plaintiffs had established that Storms-Tyler had misrepresented the facts about Defendant's distribution of the device used in Mr. Young's bronchoscopy, the Court holds that any inconsistency in the evidence would not have caused the Court to reach "a different conclusion" on the merits of Plaintiffs' claims. In response to Defendant's first motion for summary judgment, Plaintiffs expressly conceded their claims for breach of express warranty and strict liability, and the Court granted Defendant judgment as a matter of law on the claims.[24] A Rule 60(b) motion "cannot undo [Plaintiffs'] failure to challenge [Defendant's] assertions" at summary judgment.[25] As such, Rule 60(b) relief is not available to alter the Court's ruling on the claims for breach of express warranty or strict liability.

Likewise, setting aside the judgment would not result in a different outcome on Plaintiffs' claims for negligence, failure to warn, and breach of implied warranty.[26] At summary judgment

---

Liability Act and its statutory definition of a 'manufacturer.'" Order Denying Pls.' Mot. to Alter or Am. 4, July 26, 2010 (D.E. # 65).

[24] Order Granting in Part, Denying in Part Def.'s Mot. for Summ. J. 8, 14, May 6, 2010 (D.E. # 55).

[25] *Massi v. Walgreen Co.*, 337 F. App'x 542, 548 (6th Cir. 2009); *Dobrowiak v. Convenient Family Dentistry, Inc.*, 315 F. App'x 580, 585 (6th Cir. 2009) ("Inadequate presentation of evidence is not an appropriate basis for relief under Rule 60(b)."); *Jinks v. AlliedSignal, Inc.*, 250 F.3d 381, 385 (6th Cir. 2001) ("Rule 60(b) does not allow a defeated litigant a second chance to convince the court to rule in his or her favor by presenting new explanations, legal theories, or proof.").

[26] Other than rehearsing their previous arguments, Plaintiffs have not shown what grounds exist to alter or amend the Court's holding on their breach of implied warranty claim. Therefore, Plaintiffs' Rule 60(b) Motion is denied as to this issue.

Plaintiffs failed to respond at all to Defendant's arguments for dismissal of the negligence and failure to warn claims. The Court granted Defendant judgment as a matter of law because the TPLA did not permit these claims against a seller who acquired and sold a product in a sealed container.[27] The undisputed evidence showed that Defendant received the bronchoscopes at issue in a sealed container and had no part in the manufacture of the devices. As a seller then, Defendant was entitled to judgment as a matter of law on Plaintiffs' negligence and failure to warn claims. Even assuming *arguendo* that Defendant was a "manufacturer" and not a "seller" for purposes of the TPLA, the Court would still hold that Defendant is entitled to summary judgment on these claims. As the Court explained in its Order Granting Defendant's Third Motion for Summary Judgment, despite receiving several extensions of the discovery period, "Plaintiffs ha[d] failed to adduce evidence from which a reasonable juror could find that the bronchoscope used in Cecil Young's procedure on April 3, 2001 was in a defective condition" and "that the bronchoscope was in a defective or unreasonably dangerous condition at the time it left Defendant's control."[28] Without this proof, the Court granted Defendant summary judgment on the breach of implied warranty claim. The same lack of proof on these essential showings would also foreclose Plaintiffs' claims for negligence and failure to warn.[29]

---

[27] Order Granting in Part, Denying in Part Def.'s Mot. for Summ. J. 8-9 (D.E. # 55).

[28] Order Granting Def.'s Third Mot. for Summ. J. 9-11, Jan. 26, 2012 (D.E. # 109).

[29] Tenn. Code Ann. § 29-28-105(a) ("A manufacturer or seller of a product shall not be liable for any injury to person or property caused by the product unless the product is determined to be in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller."); *Higgs v. Gen. Motors Corp.,* 655 F. Supp. 22, 23 (E.D. Tenn.1985). ("[I]t makes no difference whether the complaint is couched in terms of negligence, strict liability or breach of warranty, it has generally been held in the State of Tennessee that in order for a plaintiff to recover under any theory of product liability, the plaintiff must establish that the product was defective and unreasonably dangerous at the time the product left the control of the manufacturer.").

In short, even if the Court set aside its previous judgment on the negligence and failure to warn claims, the Court would reach the same result on the merits. Therefore, Plaintiffs' Motion under Rule 60(b)(3) must be **DENIED**.

**III. Other Reasons Justifying Relief - Rule 60(b)(6)**

Next, the Court holds that Plaintiffs have not shown that relief is proper under Rule 60(b)(6), the catch-all provision. The Sixth Circuit has explained that "[e]ven stricter standards are routinely applied to motions under subsection (6) of Rule 60(b) than to motions made under other provisions of the rule" because Rule 60(b)(6) relief may be granted "only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule."[30] The kind of exceptional or extraordinary circumstances required for Rule 60(b)(6) relief are defined "as those unusual and extreme situations where principles of equity mandate relief."[31] Plaintiffs' Motion is largely based on Plaintiff's allegations of fraud or misconduct and the availability of new evidence. Plaintiffs have not shown with any specificity how theirs is the unusual or extreme situation where Rule 60(b)(6) relief is mandatory. Therefore, Plaintiffs' Motion is **DENIED** to the extent that it is based on Rule 60(b)(6).

**IV. Fraud on the Court - Rule 60(d)(3)**

Finally, Plaintiffs seek relief from judgment pursuant to Rule 60(d)(3) for fraud on the court. The Sixth Circuit has defined "fraud on the court" to include "the most egregious conduct involving a corruption of the judicial process itself" such as "bribing a judge, employing counsel to exert

---

[30] *Stokes v. Williams*, 475 F.3d 732, 735 (6th Cir. 2007).

[31] *Export-Import Bank of U.S. v. Advanced Polymer Scis., Inc.*, 604 F.3d 242, 247 (6th Cir. 2010) (citation omitted).

improper influence on the court, and jury tampering."[32] In order to obtain relief under Rule 60(d)(3), the moving party must show the following by clear and convincing evidence: "(1) [conduct] on the part of an officer of the court; that (2) is directed to the judicial machinery itself; (3) is intentionally false, willfully blind to the truth, or is in reckless disregard of the truth; (4) is a positive averment or a concealment when one is under a duty to disclose; and (5) deceives the court."[33] Due to "the extraordinary nature of the remedy" and the general policy "against expansive use of the doctrine," the Sixth Circuit has observed that "[i]n practice, this means that even fairly despicable conduct will not qualify as fraud on the court."[34]

The Court holds that Plaintiffs have not met their burden under this very high standard to prove a fraud on the court. The only officer of the Court identified in Plaintiffs' Motion is counsel for Defendant Jameson Carroll. The Court notes that Carroll is not an attorney of record in this case, and it is not even clear that Carroll is admitted to practice before this Court. Even so, the Court finds Plaintiffs' allegations of wrongdoing to be wholly without merit. According to Plaintiffs' Motion, Carroll had knowledge of Storms-Tyler's allegedly fraudulent testimony and also intimidated or made threats of reprisal against Plaintiffs' attorneys. For reasons already explained, Plaintiffs have

---

[32] *Gen. Med., P.C. v. Horizon/CMS Health Care Corp.*, 475 F. App'x 65, 71 (6th Cir. 2012) (quoting 11 Charles Alan Wright *et al.*, *Federal Practice & Procedure* § 2870 (West 2011)); *Demjanjuk v. Petrovsky*, 10 F.3d 338, 352-53 (6th Cir. 1993) ("Fraud upon the court should . . . embrace only that species of fraud which does or attempts to, subvert the integrity of the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication, and relief should be denied in the absence of such conduct.").

[33] *Gen. Med., P.C.*, 475 F. App'x at 71 (quoting *Johnson v. Bell,* 605 F.3d 333, 339 (6th Cir. 2010)).

[34] *Id.* (quoting Moore's *Federal Practice* § 60.21[4][c]).

not shown by clear and convincing evidence that Storms-Tyler perpetrated any fraud or misrepresentation. It follows that Plaintiffs have not carried their burden to prove that Carroll somehow furthered Storms-Tyler's fraud or misrepresentation. As for the allegations of threat and reprisal, none of the evidence Plaintiffs cite about Carroll's dealings with Plaintiffs' attorneys suggest any impropriety. Therefore, Plaintiffs' Motion under Rule 60(d)(3) is **DENIED**.

## CONCLUSION

The Court concludes that Plaintiffs are not entitled to relief under Rule 60. Plaintiffs have not shown that newly discovered evidence, which would support relief under Rule 60(b)(2), exists in this case. Plaintiffs have not adduced clear and convincing proof of fraud on the part of Defendant nor shown that the Court would have reached a different result without the testimony of Laura Storms-Tyler. As such, Plaintiffs have not shown why relief under Rule 60(b)(3) would be proper. Plaintiffs have also failed to show why extraordinary relief under Rule 60(b)(6) or Rule 60(d)(3) is warranted. Therefore, Plaintiffs' Motion to Set Aside Judgment is **DENIED**.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: March 15, 2013.